# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSEPH MUSTARI,

     Plaintiff,

        v.

NEW HOPE ACADEMY,

     Defendant.

No. 03 C 4507
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Defendant New Hope Academy ("New Hope") seeks summary judgment against Plaintiff Dr. Joseph Mustari on the grounds that New Hope does not employ enough people to fall within the reach of Title VII. The parties agree that in order to qualify for coverage under Title VII, an employer must employ 15 or more employees for 20 weeks out of the current or preceding year from the date the violation is alleged to have occurred. In this case, the relevant years are 2000 and 2001. However, 2000 does not help Plaintiff's case, as it is undisputed that New Hope was not in business for 20 weeks in 2000. Therefore, the only issue before me is whether Defendant employed the requisite number of employees in 2001.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the non-movant's favor, allowing for all reasonable inferences drawn in a light most

favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-movant must offer more than "conclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

New Hope is a private corporation that started in the fall of 2000. The corporation runs a therapeutic day school whose students are impaired in a variety of ways, and to a degree that precludes their attendance at public schools. Mustari began work there in August 2000, and was terminated at the end of August 2001, remaining on the payroll for a month's severance pay. New Hope claims that it did not have "fifteen or more employees for each working day in each of twenty or more calendar weeks" in 2001, as required by Title VII. 42 U.S.C. § 2000e(b). Whether New Hope is an employer under Title VII turns on the question of who is an employee. At issue is the status of Drs. Benson and Herbert (two of the corporation's three directors) and the status of several other individuals working on a part-time basis. Title VII only applies if I find that these individuals are employees.

### *Employment Status of Drs. Benson and Herbert*

New Hope was founded and originally owned in equal shares by Drs. Kathie Benson (Vice-President) and Carol Herbster (President). Mustari contends that their "daily involvement and duties at New Hope Academy" renders them employees. New Hope responds that Benson and Herbster were shareholders and directors who cannot be counted toward the total number of employees required for the corporation to face Title VII liability. Defendant offers evidence that supports the proposition that Benson and Herbster were officers and directors who each held 45-50% of the shares of the corporation. In 2001, Benson and Herbster each gave 5% of the New

Hope stock to Elizabeth Hale. Affidavits clearly establish that if Benson and Herbster were in agreement, they could do what they wished at New Hope. If they disagreed, whoever gained the agreement of Hale would prevail.

The question of whether a shareholder/owner is an employee revolves around the presence of various factors. Roughly stated, if a person can hire or fire; can set rules for employees; is unsupervised; reports to no one; can influence the conduct of the organization; and shares in profit, loss and liability, then that person is not an employee. *Clackamas Gastroenterology Assocs. P.C. v. Wells,* 538 U.S. 440, 449-50 (2003) (citing EEOC Compliance Manual § 605:0009). If one or more of these attributes is missing then the result may well change. No one factor is determinative and none are weighted for importance. *Id.*

The professional corporation providing health care services (New Hope is an analogous structure) is precisely the kind of environment in which these questions are often presented. Usually such corporations are founded and owned by individuals who are personally able to provide the services offered, and do so as part of the business plan. For example, in *Schmidt v. Ottawa Med. Ctr., P.C.,* 322 F.3d 461 (7th Cir. 2003), the physician who was a founding shareholder of the medical center was held to be a partner-employer. As noted above, Benson and Herbster were founding shareholders of New Hope. All of the other *Clackamas* factors also tend to show that Benson and Herbster were employers who essentially ran the corporation. The two divided the management responsibilities.[1] They shared profits, losses and liabilities. They

---

[1]Plaintiff's own statement of material facts notes that Herbster and Benson managed day-to-day affairs. Both assessed applicants for admission. Herbster managed the office and business documents. She also assisted and guided teachers. Benson, a clinical psychologist, helped treat some students and led staff discussions about students. Benson assessed students and staff. Both received a salary, based partly on the work they actually did at New Hope.

could hire and fire and set rules for others. Neither was supervised and neither reported to someone higher in the organization. Both, as 45% shareholders, had the ability to influence the organization although both might fail to carry the day on policy. Each had the chance to persuade the 10% shareholder to join with them and decide all questions of policy.

In response, Mustari points to an affidavit offered by Herbster, who avers "although I was an officer, I was held responsible by the Board of Directors, which also included a third individual, Ms. Elizabeth Hale." This has no legal significance because all corporate officers, whether they are employees or employers, are responsible to the board of directors who also set compensation. Herbster, in fact, was fired by the board of directors in February 2002. These facts are consistent with her status as a shareholder-employer. Under Mustari's (and Herbster's) reasoning, all shareholders who hold less than 50% of the shares would not be employers. That proposition is clearly not true. *See Schmidt*, 322 F.3d at 467.

Herbster also says that the "salary I received was not based on the profit of the corporation but rather on my job duties and functions related to the day-to-day management." This, too, is not significant as shareholders in service companies often perform the work of the company and pay themselves for this work. If there are neither profits nor losses, this will be their only pay; but they are still employing themselves. They "report[ ] to no one other than [themselves]." *Chavero v. Local 241*, 787 F.2d 1154, 1157 (7th Cir. 1986). I find that Plaintiff has failed to raise a genuine issue of material fact regarding Herbster's and Benson's status as employers. Herbster and Benson do not count toward the total number of New Hope employees in 2001 for purposes of Title VII.

*Employment Status of Part-Time Employees[2]*

The parties also dispute the employment status of three others individuals, all part-time employees. The first, Bloblum, was a music teacher at another school. She came to New Hope for 30-45 minutes at a time to play and teach music. The second, Vandenbrouche, taught drama at New Hope for one hour per week. The third, Limpers, was a part-time physical education teacher. [3] New Hope teachers provided their own curriculum. None of these individuals was salaried (their compensation was reported on Form 1099) or received benefits, none were

---

[2] In prior submissions, Plaintiff also argued that independent contractors Gene Weiss, Suzanne Barker and Dan Gross were actually New Hope employees. Whether an independent contractor is an employee depends on a different set of factors, one of which is given special weight. The basic factors are the nature of the occupation and the skill set required to qualify for the work; the responsibility to provide equipment, supplies, workplace and maintain licensure; the method and form of payment and benefits; and the length or expectation of job commitment. *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996) (quoting *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996)); *EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998). The most important factor is the extent of the employer's control and supervision of the worker, including directions on scheduling and performance of work. *Id.*

New Hope hired consultants Weiss, Barker and Gross in 2001. Weiss is a psychiatrist with his own practice and who came to New Hope two hours each month to review cases and medications. Barker is a school nurse who consulted for three to four hours at a time but not every week. Her work was to address medication procedures and documentation. After New Hope's start-up, her hours were reduced to one hour each week. In late 2001, the need for her services increased and beginning in October 2001 she became an employee. Gross is, and has been, a full-time teacher at New Trier High School who was retained to create an electronic database to maintain the IEPs for each student and to create a network to connect New Hope's computers. He worked nights and weekends and when the projects were done in 2001, he no longer worked at New Hope. Their status as independent contractors was not contested by Mustari in his response to Defendant's Motion. I find, based on the facts offered by New Hope, that they were not employees.

[3] New Hope criticizes Mustari for shifting ground here, given that until this Motion for Summary Judgment, Mustari had not mentioned Limpers as a possible employee. I do not think the criticism is fully justified. Before discovery is complete, the identity of contractors and employees may not be entirely clear, particularly in enterprises which clearly use both. Therefore I will consider Mustari's allegations regarding Limpers.

supervised, and all had special skills which typify most independent contractors. On these facts, none could be considered employees.

In response, Mustari must offer evidence supporting his allegation that these individuals were actually employees. Mustari first offers his own affidavit, in which he asserts that Limpers worked as a part-time physical education teacher, but does not report how often she worked. He further avers that Vandenbroche was a part-time employee but "was supervised by . . . Benson . . . . Hale . . . and/or . . . Herbster who would dictate that he would teach . . . aspects of theater . . . subject to [their] review." Vandenbroche was given a specific space in which to work. So too was Bloblum, whom Mustari avers was told to teach "instruments known as bells." This is not evidence sufficient to raise a genuine issue of material fact. Mustari gives me little reason to give any weight to the statements made within his affidavit. He does not say how he would have been in a position to know the things about which he testifies. Nor does he offer an affidavit from any of these employees.

Even accepting, *arguendo,* the statements in Dr. Mustari's affidavit, several facts indicating that these three persons were not employees, but were independent contractors, remain undisputed. All worked on a part-time basis, were paid fees that were reported on Form 1099, had special skills, and provided some or all of their own equipment. Only two issues cut against their status as independent contractors. First is the fact that each received a specific space in the school in which to conduct their lessons. However, the issue of assigned space seems to have no weight in the context of a school. In this particular case, it is unlikely that a contractor could work at home, or in his or her own office. At best, an assigned space seems to be an inevitable,

6

concomitant occurrence of retaining a part-time teacher either as an employee or as an independent contractor; in other words, it is a factor equally applicable to both categories.

The second issue is Mustari's assertion that "New Hope Academy dictated the area in which they were to teach without giving the exact planning lessons." The degree of direction an employer exerts over a person working part-time is essential to determining whether that individual is an employee or an independent contractor. I suppose that a drama teacher could be hired and not told to teach "aspects of drama," but I do not think that the law requires this complete absence of direction to maintain independent contractor status. One who hires an independent contractor usually does so because he or she wants a particular job done (as was the case with the computer expert, Gross). One who hires an independent contractor is also entitled to judge the quality of the work that is being performed.

Plaintiff's best argument in support of these contractors' status as employees centers Bloblum, who was not assigned specific music to teach, but who was instructed to teach "instruments known as bells." Once again, however, this single act of direction seems sufficiently general to be considered an instruction to an independent contractor. Even if the instruction did cross the line as to what would be a reasonable instruction to an independent contractor, it alone is not enough to allow any reasonable finder of fact to conclude that Bloblum was an employee when every other indicia goes the other way. Therefore, neither Bloblum, Vandenbroche nor Limpers is an employee for purposes of determining whether New Hope was an employer within the meaning of Title VII.

For these reasons, Defendant New Hope's Motion for Summary Judgment is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 28, 2005